UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TIMOTHY LACEWELL, *pro se*,

                       Petitioner,

            -against-

JAMES BERBARY, Superintendent,
Collins Correctional Facility,

                      Respondent.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
08-cv-2440 (DLI)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* petitioner Timothy Lacewell seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 13, 2006, a jury in New York State Supreme Court, Richmond County, convicted petitioner of criminal possession of a controlled substance in the fourth degree, assault in the second degree, assault in the third degree, and resisting arrest [N.Y. Penal Law §§ 220.09(1), 120.05(3), 120.00(1), 205.30, respectively]. As to each of these crimes, respectively, petitioner was sentenced as a second felony offender to an indeterminate term of imprisonment of seven to fourteen years, a determinate prison term of seven years with five years of post-release supervision, and two definite terms of imprisonment of one year each, all to run concurrently.

On June 12, 2008, petitioner filed for habeas relief, arguing that: (1) the trial court erred by instructing the jury that they could consider petitioner's threat as evidence of consciousness of guilt; (2) the sentence is excessive; (3) the government offered perjurious testimony from an arresting police officer regarding the injuries that petitioner inflicted on him; and (4) petitioner's trial counsel was ineffective in failing to show such perjury. For the reasons set forth more fully below, the petition is denied in its entirety.

## I. Background

### A. Summary of Charges and Trial

The defendant was arrested on October 14, 2003, and charged by indictment with the crimes of criminal possession of a controlled substance in the fourth degree, assault in the second degree, assault in the third degree, criminal harassment, and resisting arrest. These charges stemmed from a car stop that turned violent when the defendant attacked the police officers who detained and arrested him. During petitioner's trial, which began on January 20, 2005 in New York State Supreme Court, Richmond County, the government presented testimony from two plainclothes New York City police officers, Detective Paul Corcoran and Sergeant Anthony Cotroneo, and Emergency Medical Technician Michael Rodriguez, among others. The defendant did not testify.

Evidence adduced at trial showed that on October 14, 2003, Detective Corcoran and Sergeant Cotroneo approached a parked car where petitioner and a companion were sitting. (Tr. 589-91.)[1] The officers noticed what they believed to be a marijuana cigarette in the vehicle and smelled what they believed to be a combination of marijuana and PCP. (Tr. 596, 601-03, 827, 834.) Sergeant Cotroneo became concerned that petitioner was trying to conceal something and asked petitioner to exit the vehicle. (Tr. 827-28.) Petitioner responded by stepping out of the car and striking the sergeant in the face. (Tr. 828.) The two men then grappled with each other, exchanged additional punches, and petitioner bit Sergeant Cotroneo. (Tr. 604-05, 828-30.) Petitioner also punched Detective Corcoran and stomped on his hand while the detective attempted to restrain and handcuff petitioner. (Tr. 604-06, 829.)

---

[1] "Tr." refers to the transcript of the trial that began on January 20, 2005.

2

After handcuffing petitioner, the officers searched petitioner's pockets and found two bags containing approximately one-quarter ounce of cocaine and 0.2 grams (approximately .00045 ounces) of PCP. (Tr. 518-21, 808-10.) Shortly thereafter, an emergency medical technician ("EMT") arrived to treat the officers' injuries. The EMT's ambulance call report indicates that Detective Corcoran complained primarily of a "hand injury," and also showed abrasions in "hands/face." (Pet'r Aff. in Supp. of Mot. to Vac. Ex. A; *see also* Tr. 557-61, 611-13, 832-33.) The officers then brought petitioner to the precinct for booking. (Tr. 613.) During booking, petitioner allegedly threatened Detective Corcoran and his family by claiming that he could get Corcoran's address from a friend who worked for EZ Pass.[2] (Tr. 617.)

Prior to closing arguments and final jury charges, defense counsel successfully moved to dismiss the criminal harassment charge, which was based on defendant's threat against Detective Corcoran during the booking process, on the basis that a single threat did not constitute a course of harassing conduct. (Tr. 905-06.) Though the harassment charge was dismissed, the prosecution requested leave to use petitioner's threat against Detective Corcoran as evidence of consciousness of guilt as to the remaining charges. (Tr. 910.) The prosecutor argued that petitioner made the threat to stop his arrest, and, as the evidence was no longer relevant to the dropped harassment charge, a jury instruction regarding consciousness of guilt was necessary to put the evidence in the proper context. (Tr. 911.) Defense counsel responded that the threat did not exhibit petitioner's consciousness of guilt, but merely his anger at being arrested. (Tr. 911.)

The court granted the prosecutor's request, agreeing that a consciousness of guilt instruction would assist the jury in placing the threat in the appropriate context. (Tr. 911.) The judge held that the jury could determine if there was an innocent explanation for the alleged

---

[2] EZ Pass manages electronic tolls for New York bridges and tunnels.

threat—e.g., a mere expression of anger—or whether the threat was made, as the prosecution argued, to disrupt the booking process. (Tr. 911-12.) Defense counsel did not make a formal objection to this ruling, suggest an alternative charge, or ask that the evidence be stricken. (Tr. 911; Resp't Aff. in Opp'n ¶ 12.)

In its final charge, the court instructed the jury that petitioner's alleged threat to Detective Corcoran could be used as evidence of consciousness of guilt. It instructed the jury further that, even if they found that the threat was evidence of consciousness of guilt, it had only "slight [probative] value" and could not, without more, be the basis for a guilty verdict. (Tr. 1015.) The jury subsequently found petitioner guilty of all charges. (Tr. 1035-36.)

On April 7, 2005, the court determined that petitioner was a second felony offender under N.Y. Penal Law § 70.06, based upon his criminal history, and thus subject to an enhanced sentence. On April 13, 2005, the court imposed an indeterminate prison sentence of seven to fourteen years for the drug conviction, a determinate prison sentence of seven years (plus five years of post-release supervision) for the second degree assault conviction, and two determinate terms of imprisonment of one year each for the third degree assault and resisting arrest convictions. (Resp't Aff. in Opp'n ¶¶ 2, 15.) All sentences were to run concurrently. (Resp't Aff. in Opp'n ¶ 15.)

B. Direct Appeal

Petitioner timely appealed his convictions to New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"). Petitioner argued that: (1) the trial court erred by admitting his threat as evidence of consciousness of guilt, and (2) his sentence was harsh and excessive in light of the 2004 amendments to New York State's sentencing scheme for drug offenders. (Resp't Aff. in Opp'n ¶ 17.) Petitioner reasoned that, because the harassment

charge had been dismissed, any evidence of the threat was irrelevant and unfairly prejudicial to his defense of the remaining charges. (Pet. at 3A.) Petitioner contended that the jury did not need contextual clarification and should have been instructed to disregard the evidence entirely. (*Id.*) The prosecution responded that petitioner's appeal of the jury instructions was not preserved under N.Y. Crim. Proc. Law § 470.05(2), and that, even if there was error, it was harmless and should not be disturbed under the Appellate Division's "interest of justice" review power. (Resp't Aff. in Opp'n ¶ 18.) With respect to the harshness of petitioner's sentence, the prosecution argued that the court's sentence was supported by petitioner's pre-sentence report which detailed petitioner's criminal history since 1982 and described him as "defensive, smug, arrogant and unrepentant" and a "career criminal who has failed to benefit from his previous contacts" with the criminal justice system. (Resp't Aff. in Opp'n ¶ 19.) Since the trial court sentenced petitioner to concurrent rather than consecutive sentences, the prosecution argued that petitioner received all leniency he could reasonably expect. (*Id.*)

On October 16, 2007, the Appellate Division affirmed the conviction, holding that "any error in giving the [consciousness of guilt] charge was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to his convictions." *People v. Lacewell*, 44 A.D.3d 876, 877 (2d Dep't 2007) (citing *People v. Crimmins*, 36 N.Y.2d 230, 241-42 (1975)). It further held that the court's sentence was not excessive. *Id.* Petitioner sought leave to appeal to the New York Court of Appeals, which application was denied. *People v. Lacewell*, 9 N.Y.3d 1035 (2008).

C. Motion to Vacate Under New York Criminal Procedure Law § 440.10

On October 30, 2006, while his direct appeal was pending, petitioner filed a motion before the Richmond County Supreme Court to vacate his conviction under N.Y. Crim. Proc.

5

Law § 440.10 ("440.10 motion"). First, petitioner alleged that the prosecutor "knowingly permitted . . . Detective Corcoran to testify falsely" about his injuries, citing purported differences between Detective Corcoran's testimony and the medical and ambulance call reports regarding those injuries. (Pet'r Aff. in Supp. of Mot. to Vac. at 2.) Specifically, Detective Corcoran testified that petitioner caused him to have a bloody nose and cut under his eye, but the ambulance call report fails to mention these injuries. (*Id.* at 3-4.) Second, petitioner argued that he was deprived of effective assistance of counsel because his counsel failed to introduce the ambulance call report into evidence to contradict Detective Corcoran's testimony regarding his injuries. (*Id.* at 9-10.) The prosecution countered with the fact that the hospital medical records which corroborated the testimony were entered into evidence, and that the substance of the ambulance call report effectively entered the record through the defense's cross-examination of Detective Corcoran and testimony from one of the paramedics who treated Detective Corcoran at the scene. (Resp't Aff. in Opp'n ¶ 23.)

On May 15, 2007, the court denied petitioner's motion as procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(b) because petitioner failed to raise the issues on direct appeal, and the underlying facts appeared on the record, permitting appellate review. (Resp't Aff. in Opp'n ¶¶ 23-24.) On August 24, 2007, the Appellate Division denied petitioner's leave to appeal this order. (Resp't Aff. in Opp'n ¶ 25.) Petitioner did not file a supplemental brief to add these claims to his direct appeal before the Appellate Division. (Resp't Aff. in Opp'n ¶ 26.)

D. Habeas Corpus Petition

On June 12, 2008, petitioner filed the instant habeas petition, reiterating the two grounds raised on petitioner's direct appeal as well as the two grounds raised in his 440.10 motion, that is: (1) the trial court erred in permitting the jury to consider petitioner's threat as consciousness

of guilt; (2) the trial court imposed an excessive sentence for a minor drug offense; (3) petitioner was harmed by discrepancies between the ambulance call report and Detective Corcoran's testimony; and (4) petitioner received ineffective assistance of counsel because his counsel failed to review the ambulance call report and, thus, was unable to properly cross-examine Detective Corcoran. (Resp't Aff. in Opp'n ¶ 27.)

## II. Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a

7

factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). When a petitioner presents the district court with a "mixed petition," including both exhausted and unexhausted issues, the court can offer the petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims." *McKethan*, 292 F.3d at 122 (citation omitted). "Alternatively, a district court may also dismiss the petition with a judgment on the merits." *Id.* (citation omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

> State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim. Moreover, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.

*McKethan*, 292 F.3d at 122 (citations and internal quotation marks omitted).

District courts cannot review a state prisoner's federal claims that are barred by an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that

8

a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989); *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."). On the other hand, if the state court holds that a claim is either unpreserved for appellate review or without merit, the claim is deemed preserved and therefore subject to habeas review. *Fama*, 235 F.3d at 810-811.

The court holds *pro se* petitioner's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will interpret the petition to raise the strongest arguments that it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

B. Trial Court's Consciousness of Guilt Jury Charge

Petitioner seeks habeas relief based on the trial court's jury charge admitting petitioner's alleged threat against Detective Corcoran as evidence of his consciousness of guilt. For cases subject to state criminal law, jury instructions are controlled by state law unless "the alleged errors were so serious as to deprive defendant of a federal constitutional right." *U.S. ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974) *cert. denied*, 423 U.S. 856 (1975); *see also Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)) ("Where an error in a jury instruction is alleged, 'it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'"). The issue for federal courts reviewing a state court's instruction is whether the jury instructions

as a whole, in the context of the entire trial record, violated a constitutional right. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Davis*, 270 F.3d at 123 (quoting *Cupp*, 414 U.S. at 147) ("The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"). If the jury instructions did not violate a constitutional right then habeas review is unavailable. *See Estelle*, 502 U.S. at 71-72.

Under New York law, "[e]vidence of threats made by the defendant against one of the People's witnesses, although evidence of prior bad acts, [is] admissible on the issue of consciousness of guilt." *People v. Reyes*, 162 A.D.2d 357, 357 (1st Dep't 1990). Evidence of consciousness of guilt has been described as "a relevant but weak form of evidence." *People v. Bierenbaum*, 301 A.D.2d 119, 138 (1st Dep't 2002). While such evidence, standing alone, is insufficient to establish guilt, jury charges with respect to consciousness of guilt do not violate constitutional rights when they are "sufficiently balanced so as to enable the jury to consider the issue fairly." *United States v. Ramirez*, 894 F.2d 565, 571 (2d Cir. 1990) (quoting *United States v. Castro*, 813 F.2d 571, 578 (2d Cir. 1987)); *see also Quartararo v. Hanslmaier*, 186 F.3d 91, 95 (2d Cir. 1999) (finding that a jury "was entitled to infer a consciousness of guilt" from conduct that "had independent probative force"); *United States v. Stewart*, 280 Fed. Appx. 44, 46 (2d Cir. 2008) (finding that a district court did not abuse its discretion in admitting evidence of prior crimes and bad acts inasmuch as that evidence was admitted to show consciousness of guilt).

Here, the record contains independent and substantial evidence beyond the threat at issue to support the conviction. *See Spruill v. Phillips*, No. 04-cv-1382 (NG) (MDG), 2005 WL 1743828, at *6-7 (E.D.N.Y. July 25, 2005) (holding that eyewitness testimony and other

evidence of defendant's consciousness of guilt rendered superfluous challenges to use of a threat and tattoo alteration as evidence of consciousness of guilt). Specifically, in addition to evidence of petitioner's alleged threat, the prosecution offered testimony by Detective Corcoran and Sergeant Cotroneo of the events leading to petitioner's arrest, one of the EMTs who treated the officers' injuries, and an expert witness who verified the substances found on petitioner when he was arrested. (Tr. at 827-832, 604-608, 556-562, 511-523.)

In addition, the trial court provided the jury with a balanced instruction that did not exaggerate the probative value of the alleged threat. *See Robinson v. Ercole*, No. 06 Civ. 1081 (NGG), 2008 WL 2522506, at *7 (E.D.N.Y. June 28, 2008) (finding no error under New York law where a trial court "properly limited the inferences the jury was permitted to draw" from evidence of flight as consciousness of guilt, "given the sufficient factual predicate for the flight instruction and the trial court's balanced instruction regarding the weakness of such evidence"). The court instructed the jury that it was the jury's responsibility alone to weigh the value of this evidence and to decide whether there was an innocent explanation for the alleged threat. (Tr. at 1014-15.) It further clarified that the alleged threat was only slightly probative and could not support a conviction on its own. (Tr. at 1015.) Thus, the jury charge permitting the alleged threat as consciousness of guilt did not violate any of petitioner's constitutional rights.

C. <u>Excessive Sentence Claim</u>

Petitioner argues that the sentence he received for a minor drug offense is excessive and violates his constitutional rights. Petitioner asserts that when he raised his excessive sentence claim before the state court he "believed then and beleives [*sic*] now that . . . he was infact [*sic*] invoking his constitutional rights or asking them to rule on the constitutionality of said sentences." (Pet'r Reply at 3.) However, on direct appeal, petitioner's argument was not

11

premised on federal or constitutional law, but rather focused solely on the extent to which the Rockefeller Drug Law Reform Act ("Reform Act"), N.Y. Penal Law § 70.70, N.Y. Session Laws, 227th Leg., ch. 738 (N.Y. 2004) (effective Jan. 13, 2005), militated in favor of greater leniency than had been shown to him. Accordingly, Petitioner has not exhausted his Eighth Amendment excessive sentence claim in the state courts. *See, e.g., DiSimone v. Phillips*, 518 F.3d 124, 126-128 (2d Cir. 2008) (finding that a district court erred by granting habeas petition where petitioner did not present claims to state court for retrial). Notwithstanding the failure to exhaust this claim, the court finds that petitioner has not raised a cognizable constitutional issue justifying federal habeas relief. Accordingly, the claim is dismissed on its merits. *See McKethan*, 292 F.3d at 122.

Claims of excessive sentences are evaluated as cruel and unusual under the Eighth Amendment by a "gross disproportionality" standard, which asks whether the sentence is "extreme . . . [and] grossly disproportionate to the crime[]" committed. *Warren v. Conway*, No. 07-CV-4117 (SJF), 2008 WL 4960454, at *30 (E.D.N.Y. Nov. 18, 2008) (citing *Hamelin v. Michigan*, 501 U.S. 957, 963-64 (1991)); *see also U.S. v. Rivera*, 546 F.3d 245, 254-55 (2d Cir. 2008). Federal habeas review of a state court sentence "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Warren*, 2008 WL 4960454 at *30. (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)). In the Second Circuit, there is no constitutional issue when "the sentence is within the range prescribed by state law." *Id.* (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

The jury convicted petitioner of criminal possession of a controlled substance in the fourth degree, a class C felony under N.Y. Penal Law § 220.09. The court also found that petitioner was a second felony offender under N.Y. Penal Law § 70.06 and based upon his prior criminal history. Under Section 70.06, a person convicted of a class C felony and subject to the second felony conviction statute is subject to a maximum indeterminate sentence of "at least six years and . . . not exceed[ing] fifteen years." N.Y. Penal Law § 70.06(3)(b). The minimum term of imprisonment applicable in the instant case "must be fixed by the court at one-half of the maximum term imposed and must be specified in the sentence." N.Y. Penal Law § 70.06(4)(b). It is undisputed that petitioner's sentence was within the applicable sentencing guidelines. Accordingly, it is beyond the scope of federal habeas review.[3]

D. <u>Discrepancy Between Detective Corcoran's Testimony and the Ambulance Call Report</u>

Petitioner alleges that Detective Corcoran submitted false testimony, based on purported discrepancies between Detective Corcoran's testimony regarding injuries he sustained while arresting petitioner and the ambulance call report describing those injuries. "A conviction must be set aside if the prosecution knew, or should have known, of the perjury, and there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Anekwe v. Phillips*, 05-CV-2183 (ARR), 2007 WL 1592973, at *6 (E.D.N.Y. May 31, 2007)

---

[3] Although the Reform Act of 2004 reduced the corresponding sentence to a determinate sentence of "at least two years . . . not exceed[ing] eight years," N.Y. Penal Law § 70.70(3)(b)(ii), the Reform Act does not apply retroactively. *People v. Utsey*, 793 N.Y.3d 398, 403 (2006) (holding that the New York "[l]egislature manifested a clear intent to negate the amelioration doctrine with respect to these provisions"). "The reduced maximum sentences do not apply to defendants who committed their crimes prior to the effective date of the statute, January 13, 2005." *United States v. Williams*, 462 F. Supp. 2d 342, 343 (E.D.N.Y. 2006) (finding that with limited exceptions not applicable here, "the ameliorative effects of the Reform Act are prospective only"). Because petitioner committed his crime in October 2003—over one year prior to the effective date of the Reform Act—the state trial court properly applied N.Y. Penal Law § 70.06 in sentencing.

(quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). However, even "a direct conflict in testimony does not in itself constitute perjury." *U.S. v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995). In determining whether perjury occurred, "the court must weigh all the evidence of perjury before it." *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003).

Here, petitioner claims that Detective Corcoran committed perjury by exaggerating the extent of his facial injuries when he testified that he suffered a bloody nose and a cut under his eye as a result of the altercation with petitioner. Petitioner alleges that the ambulance call report proves perjury because it does not specifically mention a bloody nose or cut under Detective Corcoran's eye. This argument is without merit. There is no direct conflict between the ambulance call report and Detective Corcoran's testimony, nor does the ambulance call report support an inference that the detective exaggerated the extent of his injuries. While the report states that Detective Corcoran's chief complaint was a hand injury, it also clearly states that he received trauma to the "hand/face." (Pet'r Aff. in Supp. of Mot. to Vac. Ex. A.) Therefore, petitioner's claim concerning Detective Corcoran's testimony is denied.

E. <u>Ineffective Assistance of Counsel</u>

Petitioner asserts an ineffective assistance of counsel claim based on his counsel's alleged failure to review the ambulance call report and cross-examine Detective Corcoran regarding purported discrepancies between the report and his testimony. Ineffective assistance claims can succeed only if petitioner can show that: (1) his or her attorney's performance fell below "an objective standard of reasonableness," and (2) there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A court will generally presume that counsel rendered constitutionally adequate assistance and made significant decisions through the

exercise of sound professional judgment to which "a heavy measure of deference" is afforded. *Id.* at 691. "[D]ecisions as to what extent and in what manner an attorney engages in examination and cross-examination are also tactical in nature and ordinarily not subject to review by a habeas court which has the luxury of twenty-twenty hindsight." *Walker v. Scully*, No. 90-CV-3328 (SJ), 1992 WL 220002, at *4 (E.D.N.Y. Aug. 25, 1992) (citing *United States v. Nersesian*, 824 F.2d 1294, 1321-22 (2d Cir. 1987)); *see also U.S. v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998).

Here, the trial record clearly shows that defense counsel attempted to expose inconsistencies between Detective Corcoran's testimony and the ambulance call report. When cross-examining the EMT paramedic, defense counsel asked whether anyone treated Detective Corcoran for injuries other than a hand injury and whether the hospital records described any injuries other than a hand injury. (Tr. 565.) Similarly, during his cross-examination of Detective Corcoran, defense counsel made in-depth inquiries about the detective's struggle with petitioner during the arrest. (Tr. 707-721.) Defense counsel also attempted to establish that Detective Corcoran's injuries were not extensive by asking him whether he had to "take any time off from work" after the arrest. (Tr. 771.)

The court cannot find any evidence that petitioner's defense counsel was objectively unreasonable in presenting petitioner's defense. Moreover, the substantial evidence and testimony presented regarding the officers' injuries and subsequent medical treatment do not lead the court to conclude that, but for defense counsel errors, there is a reasonable probability that petitioner would not have been convicted. Therefore, petitioner's claim of ineffective assistance of counsel is denied.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue, as petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED

DATED:    Brooklyn, New York
         October 2, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge